UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. ROBERT LEDERER,<br>    Plaintiff,<br><br>VS.<br><br>JOHN SNOW, INC. AND<br>THE JOHNS HOPKINS UNIVERSITY/<br>CENTER FOR COMMUNICATION<br>PROGRAMS,<br>    Defendants | CIVIL ACTION NO.:<br>04-CV-10284-NG |

## PLAINTIFF'S OPPOSITION TO DEFENDANT, THE JOHNS HOPKINS UNIVERSITY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. (12)(B)(6)

Now comes the Plaintiff, Dr. Robert Lederer, who, by his attorneys, files the following as his Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. (12)(b)(6).

As grounds hereto, the Plaintiff states that the Complaint in this matter clearly outlines sufficient facts to establish a Breach of Contract claim. As such, the Defendant's Motion to Dismiss must fail.

### FACTS AND ARGUMENT

I. THE FACTS ALLEGED IN THE PLAINTIFF'S COMPLAINT, ALONG WITH ALL REASONABLE INFERENCES DERIVED THEREFROM, SUFFICIENTLY SET FORTH A BREACH OF CONTRACT CLAIM SO AS TO WITHSTAND THE DEFENDANT'S MOTION TO DISMISS.

The Plaintiff's Complaint is sufficiently detailed so as to clearly set forth a claim for Breach of Contract. Thus, the Defendant's Motion to Dismiss must fail.

1

A.   **The Elements of a Breach of Contract claim.**

To set forth a claim for Breach of Contract, the Plaintiff "must plead:

(1) that the parties had an agreement supported by valid consideration;

(2) that plaintiff[] was ready, willing and able to perform;

(3) that defendant['s] breach has prevented [him] from performing; and

(4) that plaintiff[ ] [was] damaged."

Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir.1996).

B.   **The Court must accept as true all facts alleged in the Plaintiff's Complaint and credit to Plaintiff all reasonable inferences derived from them.**

The prism through which the court views the facts for this Motion is clearly skewed in the Plaintiff's favor. In a 12(b)(6) Motion to Dismiss, the court must accept as true all of the allegations contained in the Complaint. These facts, along with all reasonable inferences favorable to the non-moving party that may be drawn from them, provide the universe of facts from which the court determines whether a valid claim has been plead. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). See also, Rogan v. Menino, 175 F.3d 75, 77 (1st Cir.1999). In order for this court to dismiss Plaintiff's claim, it must be clear from the facts alleged and all reasonable inferences taken therefrom, that the Plaintiff can not recover under any viable theory of liability. Correa-Martinex v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990).

### C. <u>The plain words in Plaintiff's Complaint clearly establish sufficient facts to sustain a Breach of Contract claim.</u>

The plain words of the Plaintiff's Complaint and the reasonable inferences derived therefrom easily satisfy the requirements for a Breach of Contract claim. The Complaint describes the history of negotiations between the parties, cumulating in their oral agreement, wherein the Plaintiff agreed to accept a nearly year-long assignment in Romania with Defendants.

The Plaintiff was initially contacted by Defendants in May of 1999 regarding a job position (Complaint ¶ 7), had further discussions in September of 2000, wherein the term of service required (approximately one year) was explicitly discussed and the Plaintiff indicated his interest in such a term of service (Complaint ¶ 8). In October of 2000 these discussion became decidedly more serious and the parties actively began to discuss terms of a contract (Complaint ¶ 9) which eventually led to the agreement (hereinafter "Agreement") that now forms the basis of the Plaintiff's Complaint for Breach of Contract (Complaint ¶ 10).

The existence of the Agreement between the parties is clearly set forth in the Complaint. Some of the terms of the Agreement are explicitly outlined, while others are gleamed from reasonable inferences.

The Agreement clearly called for the Plaintiff to work for approximately one year in Romania (Complaint ¶ 10). This arrangement was, at the very least, to consist of two distinct stays in Romania for the Plaintiff. The First stay would be until the Christmas and New Year's Holidays, at which time the Plaintiff would

3

return home to retrieve additional personal belongings (including his dog) for his return to Romania in January to complete the assignment (Complaint ¶ 10).

From the time of reaching the Agreement until his eventual departure in December, the Plaintiff was informed that the Defendants were working on drafting a written contract outlining the terms of the Agreement (Complaint ¶ 11). On November 29, 2000, the Plaintiff was informed that the Defendants had prepared a limited "contract" for his first stint in Romania (Complaint ¶ 12). Plaintiff received this "contract" on December 1, 2000, the day before he was scheduled to depart to Romania (Complaint 14).

On or around December 1, 2000, the Plaintiff was informed by Defendants that he would receive a contract in Romania which covered the remaining period of his assignment in 2001 (Complaint ¶ 14). Upon his return to the United States, the Plaintiff was informed that the second contract had not been sent for fear it would not reach him in Romania (Complaint ¶ 17 and Exhibit C).

As part of his job duties, the Plaintiff was to complete a "trip report" outlining his observations and experiences from the initial phase of his trip to Romania (Complaint ¶ 18). The Plaintiff's report contained sharp criticisms of the Defendants' conduct of operations in Romania. The Defendants were not happy with the content of the report and tried to influence the Plaintiff to change it by offering additional funds (Complaint ¶ 19) and, later, by withholding his payment for the days he had served in Romania and his reimbursement for his travel expenses incurred on the trip (Complaint ¶ 20).

4

On or about January 22, 2001, the Plaintiff met with a representative of Defendant, JSI, who assured him that his position in Romania was not in jeopardy because of his report and that he would be contacted shortly about the schedule for his return to Romania to complete his assignment (Complaint ¶ 21).

At all times, the Plaintiff was ready, willing and able to complete his portion of the Agreement and remained in contact with Defendants (Complaint ¶ 23).

The Defendants breached the Agreement with the Plaintiff by removing him from his assignment in Romania (Complaint ¶ 22) and by refusing to reimburse him for his travel expenses (Complaint ¶ 23).

The facts listed above, combined with any reasonable inferences gleaned therefrom, sufficiently plead a Breach of Contact claim. The Plaintiff has established the existence of an Agreement with mutually binding obligations; a contract the Plaintiff was ready, willing and able to perform, but was prevented from doing so by the Defendants. The Plaintiff was damaged as a result, in that he lost his employment in Romania, the pay he was to receive for the same and he was never fully compensated for his travel expenses from the initial phase of the trip to Romania.

II. **THERE HAS NOT BEEN FULL PERFORMANCE OF THE PLAINTIFF'S CONTRACT WITH THE DEFENDANTS AS THE AGREEMENT BETWEEN THE PARTIES CONSISTED OF A TERM OF SERVICE OF APPROXIMATELY ONE YEAR AND THERE STILL REMAINS TRAVEL EXPENSE REIMBURSEMENT MONIES OWED TO PLAINTIFF FOR HIS TRIP TO ROMANIA.**

In its Motion, the Defendant asserts that, should this court find that a Breach of Contract claim has been sufficiently plead, it is moot as there has been no breach and full performance by the Defendants.

**A.   The Letter Agreement contained in Exhibit "B" is not the entire Agreement of the parties and merely represents the parties' understanding as to the initial trip to Romania.**

As is outlined above, the Plaintiff's Complaint does not allege that the Plaintiff is basing his Complaint solely upon the breach of the Letter Agreement of Exhibit "B". In fact, it is clear that the Plaintiff is basing his claim upon the breach of the parties' Agreement in which the Plaintiff agreed to work for Defendants for approximately one year (Complaint ¶ 10), which was breached when the Plaintiff was not allowed to return to Romania to complete his assignment.

In no way does the Letter Agreement of Exhibit "B" contain the complete terms of any agreement of the parties. Nowhere in the Letter Agreement does it state that it represents the only understanding between the parties or supplants any other agreements between the parties.

In fact, the Plaintiff's pleadings make it abundantly clear that there were two contracts being prepared, including one that would reduce to writing the Agreement reached between the parties in October of 2001.

Exhibit "B" merely represents one piece in the mosaic of items that make up the evidence supporting the Plaintiff's contention that there was an Agreement between the parties for an approximately one year assignment to Romania.

6

**B.    The Plaintiff is claiming a violation of the terms of the Letter Agreement in that he is claiming that he is still owed travel expense reimbursements.**

Under the standard of review mandated by Rule 12(b)(6), the Plaintiff has established that he has not been reimbursed for his travel expenses from his initial trip to Romania (Complaint ¶¶ 22, 24).

This would be a violation of the Letter Agreement contained in Exhibit "B" and, more importantly, a violation of the parties Agreement made in October of 2001.

As such, the Plaintiff's claim for Breach of Contract must stand.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Honorable Court <u>deny</u> the Defendant's Motion to Dismiss.

## REQUEST FOR ORAL ARGUMENT

The Plaintiff hereby requests this Honorable Court grant oral argument in this matter.

DR. ROBERT LEDERER
By His Attorneys,
RUBIN, WEISMAN, COLASANTI, KAJKO & STEIN, LLP

_____
David B. Stein, BBO# 556456
Christopher J. DiMare, BBO# 647029
430 Bedford Street
Lexington, MA 02420
Tel.: (781) 860-9500
Fax: (781) 863-0046

Dated: February 20, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Dated: 1/20/04

7